NO. 13-30891

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

DANYON McCAROLL,

Plaintiff - Appellant

VERSUS

WOOD GROUP MANAGEMENT SERVICES, INCORPORATED

Defendant - Appellees

_____

On Appeal from the United States District Court
for the Eastern District of Louisiana,
Honorable Sarah S. Vance, Presiding

_____

**ORIGINAL BRIEF ON BEHALF OF THE APPELLANT,
DANYON McCARROLL**

LAWRENCE BLAKE JONES  (7495)
DAVID C. WHITMORE  (17864)
SCHEUERMANN & JONES
701 Poydras Street, Suite 4100
New Orleans, Louisiana  70139
Telephone:  (504) 525-4361
Attorneys for Appellant, Danyon McCarroll

## **CERTIFICATE OF INTERESTED PERSONS**

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case.  These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

1,    Danyon McCarroll, Appellant

2.    Wood Group Management Services, Inc.

3.    Lawrence Blake Jones, Counsel for Appellant

4.    David C. Whitmore, Counsel for Appellant

5.    Scheuermann & Jones, LLC, Counsel for Appellant

6.    David W. Leefe, Counsel for Appellee

7.    Devin C. Reid, Counsel for Appellee

8.    Liskow & Lewis, Counsel for Appellee


　　　　　　　__s/ David C. Whitmore_____
　　　　　　　David C. Whitmore
　　　　　　　Attorney of Record for Appellant, Danyon McCarroll

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

The appellant, Danyon McCarroll, respectfully waives oral argument.

# TABLE OF CONTENTS

Page

**CERTIFICATE OF INTERESTED PERSONS**     i

**STATEMENT REGARDING ORAL ARGUMENT**     ii

**TABLE OF AUTHORITIES**     v

**STATEMENT OF JURISDICTION**     1

**STATEMENT OF ISSUES PRESENTED FOR REVIEW**

The appellant was a scaffold builder employed by GIS. At the time of the accident, no scaffolding was being constructed. The appellant and his co-workers were thus assigned by their supervisor to perform work assisting the crane operator in crane activities. The crane operator was an employee of the appellee, and he is in charge of crane operations. During these crane operations, while attempting to untangle a line from the crane to a cargo box, the appellant slipped and fell because the deck of the platform where he was working was slippery. The District Court granted summary judgment in favor of Wood Group, finding that it owed no duty to the appellee, in part because it found that Wood Group was not supervising him at the time of the accident. Was this conclusion in error?

    1

**STATEMENT OF THE CASE**     2

**STATEMENT OF FACTS**     4

**SUMMARY OF ARGUMENT**     8

**ARGUMENT**     10

    **STANDARD OF REVIEW**     10

**1.     THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT WHEN THERE EXISTED GENUINE**

**ISSUES OF MATERIAL FACT AS TO WHETHER WOOD GROUP EMPLOYEES SUPERVISED THE APPELLANT AND THUS OWED HIM A LEGAL DUTY.**                    10

**CONCLUSION**                                           22

**CERTIFICATE OF SERVICE**                     24

**CERTIFICATE OF COMPLIANCE**          25

# TABLE OF AUTHORITIES

Page

*Ellison v. Conoco, Inc.*, 950 F.2d 1196, 1205 (5th Cir. 1992)          10

*Gray v. Motiva Enterprises*, No. 01-1167, 2002 WL 826606
 (E.D. La. April 30, 2002)(Vance, J.)          15

*Joyner v. Ensco Offshore Co.*, No. 99-3754, 2002 WL 118559
 (E.D. La. Feb. 7, 2001)          16

*Lemaire v. Louisiana Dept. of Transp. and Dev.*, 480 F.3d 383
 (5th Cir. 2007)          10

*Lemann v. Essen Lane Daiquiries, Inc.*, 923 So. 2d 627, 632-33
 (La. 2006).          11

*Parker v. Petroleum Helicopters, Inc.,* No. 99-1139, 1997 WL 461655
 (E.D. La. March 20, 2002)(McNamara, J.)          14

*Verdin v. Kerr McGee Corp.*, No. 95-1483, 1997 WL 39308
 (E.D. La. Jan. 29, 1987)(Berrigan, J.)          12-13

## STATEMENT OF JURISDICTION

The District Court had jurisdiction in this matter in diversity under 28 U.S.C. § 1332, as the appellant is a citizen of the State of Louisiana and the appellee is a corporation organized and existing under the law of the State of Texas with its principal place of business in the State of Texas. [ROA p. 6].

The Court of Appeals has jurisdiction pursuant to 28 U.S.C. §1291, as this is an appeal from a final summary judgment disposing of all parties' claims.

The judgment in this matter was entered on July 31, 2013. The Notice of Appeal was filed on August 19, 2013, within the thirty day time limit provided for in FRAP 4(a).

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.    The appellant was a scaffold builder employed by GIS. At the time of the accident, no scaffolding was being constructed. The appellant and his co-workers were thus assigned by their supervisor to perform work assisting the crane operator in crane activities. The crane operator was an employee of the appellee, and he is in charge of crane operations. During these crane operations, while attempting to untangle a line from the crane to a cargo box, the appellant slipped and fell because the deck of the platform where he was working was slippery. The District Court granted summary judgment in favor of Wood Group, finding that it

owed no duty to the appellee, in part because it found that Wood Group was not supervising him at the time of the accident. Was this conclusion in error?

## STATEMENT OF THE CASE

The appellant, Danyon McCarroll, alleges that he was injured on July 2, 2009, while he was employed by a third party – Grand Isle Shipyards, Inc. – aboard a platform in the Gulf of Mexico, the BP ATLANTIS. The appellant was injured while performing rigging operations, when he slipped and fell to the deck of the platform. At the time, the appellant alleged he was being by a crane operator employed by the appellee.

On October 7, 2011, the appellant filed a Petition for Damages in the 25th Judicial District Court for the State of Louisiana; claims were asserted against Seatrax Services, Inc. and Seatrax of Louisiana, Inc. [ROA 11]. On May 25, 2012, a First Amended Petition was filed, adding Wood Group/MO Services, Inc. as a defendant. [ROA 17]. Wood Group/MO Services, Inc. filed Exceptions and Answers to the Petition and First Amended Petition on August 3, 2012. [ROA 19]. The plaintiff thereafter voluntarily dismissed Seatrax Services, Inc. and Seatrax of Louisiana, Inc., by Order entered September 25, 2012. [ROA 22-23]. A Notice of Removal was then filed by Wood Group in state court. [ROA 34-37].

Wood Group then filed a Notice of Removal in the United States District Court for the Eastern District of Louisiana on October 1, 2012. [ROA 5]. On

January 28, 2013, Wood Group filed its first Motion for Summary Judgment. [ROA 92]. In that motion, Wood Group alleged that the appellant's claims against it should have been dismissed because the appellant had previously filed a lawsuit against other parties arising from the accident that is the subject of this litigation; Wood Group alleged that La. C.C. Art. 425(A) required the appellant to assert all of his claims against all possible parties in the prior litigation, which litigation had been dismissed by the same District Judge that heard the present case. [ROA 92]. On February 5, 2013, the appellant opposed the first Motion for Summary Judgment [ROA 134], and Wood Group filed a Reply Memorandum in Support of its position. [ROA 162]. At the time this matter was ultimately disposed of by the District Court (which is the subject of this appeal), the first Motion for Summary Judgment had not been decided.

On February 15, 2013, the appellant filed an Amended Complaint to address issues related to the ownership of the BP ATLANTIS; this was done in order to address issues raised in the first Motion for Summary Judgment. [ROA 159].

The parties proceed with discovery, having been assigned a trial date of August 12, 2013. [ROA 78-79]. On June 14, 2013, Wood Group filed the Motion for Summary Judgment which is the subject of this appeal. [ROA 176]. On June 25, 2013, the appellant opposed the motion [ROA 380]; Wood Group filed a reply memorandum in support of its position on July 16, 2013. [ROA 430].

On July 24, 2013, the District Court issued its Order and Reasons, granting the second Motion for Summary Judgment. [ROA 454]. Judgment was entered on July 31, 2013. [ROA 466]. A Notice of Appeal was filed on August 19, 2013. [ROA 467].

## STATEMENT OF FACTS

At the time of the incident which gave rise to this litigation, Mr. McCarroll was employed by a third party, Grand Isle Shipyard ("GIS"). He testified that, in his employment with GIS, he was a scaffold builder.[1] However, he testified that on the BP Atlantis – the platform on which his accident occurred – "they had another company building the scaffolding on Atlantis. So we weren't building scaffolds on Atlantis."[2] While the defendant alleges that Mr. McCarroll took instructions or orders from his GIS supervisor/foreman, Mr. McCarroll testified, that at in regard to the operation underway at the time of his accident (unloading a barge with a crane), his foreman instructed him "to assist…the crane operator and… whoever he was working with. That was my instructions, to assist them."[3] Mr. McCarroll testified that his foreman "pretty much handed us over…" to the crane operator[4]; later, he clarified his statement:

Q.    So, Mr. McCarroll, on that day what did your foreman tell you to do?

---

[1] ROA p. 391, ll. 15-17.
[2] ROA p. 392, ll. 6-12.
[3] ROA p. 395, ll. 6-9.
[4] ROA p. 394, ll. 7-10.

A. Well, earlier in the day, of course, we worked under his supervision. I can't recall – of course, it's four years ago -- what we were doing prior to unloading this barge, but around lunchtime, I believe it was, he pretty much handed us over to, you know, the crane operator and whoever, you know, his radio guy was to unload the barge.[5]

In fact, Mr. McCarroll testified that, at the time of his accident, his foreman "may have been on the rig, but he was not directly in our work area."[6]  Counsel for the Wood Group attempted to impeach Mr. McCarroll with testimony from prior litigation regarding this accident, and his testimony about the word "foreman" in that case (actually, the word used by counsel for the defendant in that earlier case):

> Q.    So, Mr. McCarroll, you said your foreman wasn't there whenever you guys were moving the containers; is that right?
>
> A.    Right.
>
> Q.    In your prior deposition you were asked: "Wherever your foreman told you to put them," the containers, "you were putting them", and you answered, "Yes, sir."
> . . .
> Q.    Do you recall answering that question?
>
> A.    Not specifically that question, but I mean this was two years ago. But **by foreman, I mean, I guess that you mean whoever's giving me direction and at that moment.**
>
> Q.    Okay.
>
> And then later on you were asked: "And your GIS foreman was telling you, you know, put this container right here, and then you directed the crane operator to put it right there; correct?"

---

[5] ROA p. 396, ll. 8-17.
[6] ROA p. 397, ll. 17-18.

. . .

Q.    And you answered: "Right."

Do you remember answering that question?

A.    Not specifically.

Q.    But you were under oath in the May 2011 deposition; weren't you?

A.    Right.

Q.    You told the truth in the May –

A.    Of course.

Q.    -- 2011 deposition?

A.    Yes.

Q.    And you told me earlier that your memory was fresher whenever you testified in May 2011 than sitting here today. Do you remember that just a few minutes ago?

A.    Of course, I do. I mean anyone's memory would be fresher two years prior.

Q.    So in May of 2011 you said under oath that you were following direction from the GIS foreman; is that right?

A.    If that's what it says on the -- on your paper, I guess I did.

Q.    That's different than what you're telling me to this day?

A.    Well, I'm not trying to be, you know, contradictory to what I said then. I'm being as truthful now as I was then. Maybe I just mis-worded myself. I don't know.

But I know that, you know, a foreman was not there at the time and that we were told to unload the barge, and like we were under

> supervision by another employee of whoever and that, you know --
> and it wasn't, you know, by GIS. So I mean I don't know if I meant
> then that a foreman like -- By foreman, I was saying this guy who was
> supervising us at the time or what.[7]

Thus, Mr. McCarroll's testimony establishes that, ***at the time of his accident***, he was not under the supervision of his GIS foreman. Instead, his GIS foreman had turned his supervision over to the crane operator and the radio man working with the crane operator, to assist the crane operator and radio man with unloading the barge. The appellant's testimony is supported by a witness, Dylan McCarroll, who was working with his brother on the day of the accident. In his deposition taken in the first case arising out of this accident Dylan initially described the crane operator as a man who "had a missing digit on his finger."[8] Later, when asked whether "the guy with the missing finger" was a GIS hand, Dylan responded he was not:

> I know that he didn't work for GIS. I know that he was our boss and our
> boss told us to listen to what he had to do and help him out with the crane
> and everything in moving stuff.[9]

By its own admission, Wood Group (or, more correctly, Baker, its predecessor) employed the crane operator and the radio man.[10]

---

[7] ROA p. 401, l. 15 to p. 404, l. 15.
[8] ROA p. 407, ll. 12-14.
[9] ROA p. 408, l. 20 to p. 409, l. 8.
[10] ROA p. 280, ¶¶ 3-4.

# SUMMARY OF ARGUMENT

In granting the Motion for Summary Judgment below, the trial court erred when it determined that the appellees did not owe a duty to the appellant at the time of the accident.  On the date of the accident, the appellant was employed by GIS, which had been contracted to perform scaffolding operations on the platform at issue.  In turn, the record establishes that Baker/MO had been contracted to perform crane operations.  The appellee – Wood Group – is the successor corporation to Baker/MO, and was thus named as a defendant in this litigation.

Prior to the appellant's accident, there was no scaffolding being built on the platform.  However, crane operations were underway in that cargo boxes were being moved from a vessel to the deck of the platform.  At the time, the appellant's supervisor – another employee of GIS – instructed the appellant and the rest of his crew to work under the supervision of the crane operator and assist in unloading the cargo boxes from the vessel to the platform.  In the course of those operations, the appellant was injured.

The District Court granted summary judgment under Louisiana negligence law in favor of Wood Group.  In doing so, the District Court determined that Wood Group did not owe a duty to the appellant which could give rise to a negligence claim.  This decision was in error, because the record clearly establishes that, at the time of the accident, the appellant and his co-workers (who were scaffold builders)

were engaged in crane operations, working under the supervision of the crane operator, who was an employee of Baker/Wood Group. The District Court's conclusion was based on a misunderstanding of the facts, and was focused on the appellant's activity at the moment of the accident (retrieving a piece of equipment to untangle a line from the crane to a cargo box) rather than on the fact that the appellant's activities at the moment were done under the supervision of the appellee's employee, and that the accident resulted from working under conditions which caused the deck to become slick. The appellant alleges he fell because the deck was slippery, and the crane operator should have halted the operations or instructed persons working under his supervision (including the GIS crew) to take remedial actions. While the District Court never reached the issue of causation, the its conclusion that Baker/Wood Group did not owe the appellant a duty was clearly in error because the record establishes that the GIS crew was involved in crane operations at the time, and it was Baker/Wood Group which was responsible for crane operations through its employee – the crane operator, who was supervising the appellant and his co-workers at the time.

## ARGUMENT

## STANDARD OF REVIEW

The Court reviews the district court's grant of summary judgment *de novo*. *Lemaire v. Louisiana Dept. of Transp. and Dev.*, 480 F.3d 383 (5th Cir. 2007).

**1.    THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT WHEN THERE EXISTED GENUINE ISSUES OF MATERIAL FACT AS TO WHETHER WOOD GROUP EMPLOYEES SUPERVISED THE APPELLANT AND THUS OWED HIM A LEGAL DUTY.**

In this appeal, the Court considers summary judgment which was granted in favor of the appellee, Wood Group.  The District Court correctly summarized the law on summary judgment, and that law will not be set forth again herein.[11]

In its Motion for Summary Judgment, Wood Group contended that it was entitled to summary judgment on two grounds:

(1)    Baker (Wood Group's predecessor corporation and the corporation performing operations on the platform at the time of plaintiff's accident) owed no duty to the plaintiff; and

(2)    There was no evidence that Baker caused plaintiff's injury.

In granting the Motion for Summary Judgment, the District Court concluded:

Because McCarroll presents no evidence to show that Baker was supervising him when he was injured, the Court finds that no genuine issue of material fact exists regarding whether Baker owed him a duty.[12]

The District Court did not address the issue of causation.

---

[11] ROA 459-61
[12] ROA 463-64.

The appellant respectfully avers that, contrary to the District Court's conclusion, there are genuine issues of material fact in regard to whether Wood Group owed the appellant a duty, and the Motion for Summary Judgment should have been denied.

As the District Court stated:

Under Louisiana law, allegations of negligence are reviewed under a five-part inquiry known as a duty-risk analysis. *Lemann v. Essen Lane Daiquiries, Inc.*, 923 So. 2d 627, 632-33 (La. 2006). To prevail, a plaintiff must prove that: "(1)the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) the defendant's substandard conduct was a cause in fact of the plaintiff's injuries (cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries; and (5) the actual damages (the damages element)." *Id.* at 633. The plaintiff must prove each element to establish liability. *Id.*

A threshold issue in a negligence action is whether the defendant owed a duty. *Id.* "Whether a duty is owed is a question of law." *Id.*; *Ellison v. Conoco, Inc.*, 950 F.2d 1196, 1205 (5th Cir. 1992). Courts consider the "unique facts and circumstances presented" in each action to determine whether a duty exists. *Id.*[13]

In its Memorandum in Support of its motion, Wood Group contended that it did not owe a duty to McCarroll because "[t]he relationship between fellow independent contractors is a…situation where no legal duty exists."[14]

In regard to the activities which led to McCarroll's accident in this case, the defendant concluded:

---

[13] ROA 461-62.
[14] ROA 185.

The cargo operation required two sets of independent contractors, each performing their respected jobs. As a fellow independent contractor, Baker had no duty to watch McCarroll and to prevent him from performing his work in an unsafe manner – Baker had its own specific task to perform. As a fellow independent contractor, it was GIS's and McCarroll's duty to perform their job safely. McCarroll cannot prove that Baker, as a fellow independent contractor, owed a legal duty to prevent his own substandard performance as a separate independent contractor.[15]

The appellant's claim against Wood Group in this matter is a relatively simple one – McCarroll alleges he was injured while working under the supervision of the defendant's crane operator and radio man, when he slipped and fell in an oily sheen on the deck of the platform.

In support of its argument that it owed no duty to the appellant, Wood Group cited four cases.

In *Verdin v. Kerr McGee Corp.,*[16] the Court rejected the plaintiff's arguments under La. C.C. Arts. 2317 and 2322 because there was no evidence that the subject defendant had custody of or owned the platform at issue. The appellant in this case has not raised those issues.

However, the District Court addressed the parties' arguments in regard to possibility of the defendant's liability under a "company man" theory of liability. The District Court rejected those arguments because of the defendant's lack of operational or supervisory control:

---

[15] ROA 186-87.

[16] No. 95-1483, 1997 WL 39308 (E.D. La. Jan. 29, 1987)(Berrigan, J.),

Plaintiff and Dolphin have not shown facts that create a genuine issue regarding control. The deposition testimony in this matter establishes that Martin did not actually exert operational or supervisory control. Plaintiff stated in his deposition that his "boss" when he was on the platform was Dolphin superintendent Rodney Brunet. Brunet stated in his deposition that he was the supervisor:

> Like I'm the supervisor so I'm supposed to make sure they do everything, you know, that's in a safe way. In other words, make rounds. Something like, I guess, safety representative out there, too.

Brunet was in charge of the welding crew to which Verdin was assigned. Brunet acknowledged in his deposition that all of the directions and instructions for Verdin's crew were to come from him -- he and his welding crew looked at the area and he told the crew what to do.[17]

As the Statement of Facts above makes clear, Mr. McCarroll's case is clearly distinguishable from *Verdin* in its facts. While Mr. McCarroll acknowledged that there was a GIS foreman/supervisor with whom he worked, he testified that the supervisor was not in the area supervising him and his co-workers at the time his accident occurred. Instead, at the time of the accident, the GIS supervisor had turned the GIS crew over to work under the supervision of the crane operator, who the evidence established was employed by Wood Group's predecessor, Baker, for which Wood Group is liable as a successor corporation. Mr. McCarroll testified that "we [the GIS crew] were under the supervision of another employee [the crane operator]...and it wasn't by GIS."[18] Dylan McCarroll

---

[17] *Id.* at *4
[18] ROA 404, ll. 9-11.

testified that the crane operator was the boss at the time, and that the GIS boss "told us to listen to what he had to do."[19]

Wood Group also cited *Parker v. Petroleum Helicopters, Inc.,*[20] which, like *Verdin*, also involved a company man; the District Court found the company man's employer in that case (Lowe) also did not owe a duty to the plaintiff, a welder who was injured by rotor wash from a helicopter on the platform's heliport blew a windbreak which the plaintiff was holding:

> The court finds that Lowe is entitled to summary judgment as a matter of law because Plaintiff has failed to establish, under Louisiana or Alabama law, any legal duty owed by Lowe (and Cestia) to him that was breached. Lowe did not own or have custody of the subject platform, did not employ Plaintiff, and had no contractual relationship with Plaintiff's employer, Dynamic. Further, while Lowe (and Cestia) had the right to check the progress and quality of Dynamic's work, they did not actually supervise the methods used by Dynamic (and Plaintiff) to accomplish their work. Further, Dynamic chose the work method used, including the use of the subject windbreak and instructed its employees on how to perform their work.[21]

Once again, *Parker* is distinguishable from the present case because an employee of Wood Group was supervising the appellant and his co-workers and the work they were doing at the time of the accident. (As stated in the Statement of Facts, above, it must be remembered at this point that GIS employees like McCarroll were scaffold builders; at the time of the accident, they were not

---

[19] ROA 409, ll. 3-8.
[20] No. 99-1139, 1997 WL 461655 (E.D. La. March 20, 2002)(McNamara, J.)
[21] *Id.* at *1.

14

building scaffolds; instead, they were assisting the crane and its operator with the movement of cargo boxes, which is not a scaffolding operation.)

The third case cited by Wood Group in support of its Motion for Summary Judgment – *Gray v. Motiva Enterprises*[22] - is similarly distinguishable. The plaintiff's employer was in the lawn care business, and had been hired by Motiva for such, and plaintiff was injured while cutting the grass at a Motiva property. In granting summary judgment, the District Court concluded:

> Here, the Court finds that Motiva did not owe plaintiff a duty. Plaintiff testified during his deposition that at the time of the accident, he was employed by IPM, that IPM paid him, that IPM provided him with the equipment and that his supervisor was an employee of IPM. … He admitted that no one at Motiva enterprises gave him any instructions or provided him with any equipment. … Indeed, he admits that he did not know anyone at Motiva…In contrast, plaintiff presents no evidence to show that Motiva owed him a duty. The Court therefore finds that no genuine issue of material fact exists regarding whether Motiva owed plaintiff a duty at the time of the accident.[23]

Evidence from both the appellant and his co-worker in this case establish that they not only knew the crane operator employed by Wood Group, but that they were assigned to work under his supervision.

The fourth case cited by Wood Group actually supports, in the end, the appellant's position in this case that the supervision of the GIS crew by the Wood

---

[22] No. 01-1167, 2002 WL 826606 (E.D. La. April 30, 2002)(Vance, J.)
[23] *Id.* at *2.

Group crane operator created a legal duty, and the District Court was in error in failing to find as such, or in failing to find that a question of fact existed.

In the *Joyner* case[24], after concluding that a defendant – "Clary" – was not the owner of the rig or the principal and thus could not avail himself of the "independent contractor" defense, the Court stated:

> In this case, plaintiff seeks to hold Clary liable for his own acts, i.e. allegedly urging plaintiff to get a seal on the hanger when Clary allegedly knew that it would be extremely difficult. Thus, the Court must determine the duty imposed by law upon Clary.
>
> "Generally, a person owes a duty to exercise reasonable care to protect others against the foreseeable risks of his misconduct."[25]

The Court then concluded that Clary did not owe a duty to the plaintiff in that case:

> Considering his specialized knowledge of the field and that it was Joyner's own decision to choose an appropriate work method,… the Court cannot find that Clary owed a duty to prevent Joyner from injuring himself while tightening down the lock down pins. In other words, Clary's duty to Joyner did not encompass the risk that Joyner would be injured using a work method that Joyner himself, an experienced field technician who chose his own work methods and had the authority to refuse any unsafe work procedure, believed to be safe.[26]

Unlike the plaintiff in *Joyner*, the appellant in this case was not injured doing his regular job, which was scaffold building.

---

[24] *Joyner v. Ensco Offshore Co.*, No. 99-3754, 2002 WL 118559 (E.D. La. Feb. 7, 2001).
[25] *Id.* at *3.
[26] *Id.* at *4.

However, even though it did not find a legal duty, the District Court in *Joyner* then considered the case under the assumption that there was a duty, and it is this section of the decision that supports the appellant's position that Wood Group owed him a legal duty in the present case:

> According to plaintiff's deposition testimony, Clary had the right to check the progress and quality of Joyner's work **but did not actually supervise** the methods used by Joyner to accomplish his tasks…. Additionally, **Clary did not even watch Joyner the day he was injured**, including setting the hanger, testing the seal or tightening the lock down pins.[27]

In the case of Mr. McCarroll, the crane operator and his radio man to whom the GIS crew had been assigned to work did "**actually supervise**" and did "watch [McCarroll] on the day he was injured."   (In fact, the GIS supervisor who had turned his crew over to the supervision of the crane operator was not watching the work at the time; he was not even in the area.)  Whereas the defendant in *Joyner* did not have a duty, *Joyner* implies that someone in the position of the crane operator and radio man in this case do have a duty to employees of other independent contractors under their supervision, such as the appellant and his co-workers.

A review of the District Court's Order and Reasons in the present case[28] shows that the court based its conclusions on the facts as presented by Wood Group, and/or ignored, misconstrued or discounted the testimony of the plaintiff –

---

[27] *Id.* at *5. [Emphasis added].
[28] ROA 454-65.

and completely omits any reference at all to the testimony of Dylan McCarroll. For example, in its summary of the facts, the Court stated:

> The GIS foreman on the platform instructed McCarroll and several other GIS employees to unhook containers being unloaded from a vessel using the platform crane.[29]

The Court's footnote 12 to that fact is found at "Id. at 15" and is record document 19-3. This is ROA p. 219. Nowhere on page 219 in the record is such a statement found that the "GIS foreman" instructed McCarroll or anyone to do any such thing. McCarroll and his co-workers were only instructed to work under the supervision of the crane operator.

In the end, the foregoing mistaken statement of fact by the District Court led to its erroneous decision:

> Here, the Court finds that Baker did not owe plaintiff a duty. Baker did not employ or have a contractual agreement with McCarroll or GIS. BP hired Baker as an independent contractor to perform the crane operations; it was not Baker's responsibility to supervise the employees of the co-independent contractor GIS. As in *Gray*, GIS - not Baker - provided McCarroll with all the tools necessary to perform his work on the ATLANTIS. McCarroll slipped and fell as he returned from a GIS toolshed where he retrieved the bar used to pry the cargo rigging. **McCarroll received his assignment to unrig the cargo from his GIS supervisor**, and he had the discretion to perform that task in the manner he saw fit, including using a bar to pry loose the rigging.[30]

Thus, the District Court's ultimate conclusion is based, in part, on a statement of fact that is not supported by the evidence in the record that the

---

[29] ROA 456.
[30] ROA 462-63. [Emphasis added].

appellant has previously cited.  The true fact is that McCarroll had received an assignment from his GIS supervisor to work under the supervision of the Wood Group crane operator and, at the moment of the accident and in the events leading up thereto, McCarroll was working under the supervision of the Wood Group crane operator.

Further support for the appellant's contention that the District Court's conclusion was in error is found on closer examination of the statement:

> BP hired Baker as an independent contractor to perform the crane operations; it was not Baker's responsibility to supervise the employees of the co-independent contractor GIS.[31]

The District Court is correct that "BP hired Baker as an independent contractor to perform crane operations;" one would be similarly correct in stating that BP hired GIS as an independent contractor to perform scaffolding operations.

However, the District Court is not correct in stating that "it was not Baker's responsibility to supervise the employees of the co-independent contractor GIS." Such a statement would be true if McCarroll had been injured performing scaffolding operations.  However, McCarroll was injured assisting in crane operations – the job for which Baker (i.e., Wood Group), had been hired –  and under whose supervision McCarroll was working at the time of the accident.

---

[31] *Id.*

After making the foregoing statements, the District Court then considered and rejected any arguments by the appellant that he was working under the supervision of Baker/Wood Group.  In doing so, the District Court missed the big picture, and concentrated on one isolated fact.  The issue is supervision – in general – and not in each and every minutiae, each and every act that led to the plaintiff's accident (which gets into causation, which the district court did not address – that causation being that the appellant fell on a slippery deck he should not have been working on while working under the supervision of the Baker/Wood Group crane operator).

In rejecting the appellant's factual contentions on *supervision* (and not causation), the District Court stated:

> Baker did not assume any role of authority or supervision over McCarroll. Baker's only communication with GIS employees was to alert them where the cargo would land. Indeed, McCarroll admitted that he did not receive instructions or equipment from Baker's crane operator or flag man.[32]

First of all, Baker's "communication with GIS employees…to alert them where the cargo would land" is a crane operation – a communication regarding crane operations, and not scaffold building.  The record establishes that crane operations were the responsibility of Baker/Wood Group and those working under their employees' supervision – in this case, a crew from GIS.

---

[32] ROA 464.

Secondly, when the District Court stated that McCarroll "did not receive instructions or equipment from Baker's crane operator or flag man," it references "R. Doc. 19-9 at 11-12." This is actually found at ROA pp. 371-72. Reference to this section of the record indicates that the questions posed to plaintiff at that point in his deposition concerned whether the crane operator or radio man had instructed him to go get a piece of scaffolding to untangle the lines from the crane. When plaintiff did so, he slipped and fell to the deck – and it is the slipperiness of the deck and the decision of Baker/Wood Group's crane operator to continue operations with the GIS crew under his supervision that is the crux of the appellant's complaint. But for the continuation of the crane operation in which the GIS crew was involved, the appellant would not have been walking across the deck to retrieve anything and his accident would not have occurred.

The fact is that, when the appellant attempted to get a piece of equipment to untangle the lines from the crane, he was involved in crane operations, under the supervision of the crane operator. It is the decision to continue those operations – and not the appellant's decision to retrieve something during those operations – that gave rise to the issue of supervision.

In sum, the appellant respectfully asserts that the District Court's conclusion that Baker/Wood Group did not owe the appellant a duty at the time of the accident was in error. At a minimum, there were genuine issues of material fact in regard to

duty.  The record establishes that, at the time of the accident, the GIS scaffolding crew was involved in crane operations; that crane operations were the responsibility of Baker/Wood Group; and that the crane operator employed by Baker/Wood Group was supervising the work of the appellant and his co-workers at the time of the accident.

For the above and foregoing reasons, the summary judgment granted in favor of Wood Group should be reversed, and this matter should be remanded for further proceedings.

## **CONCLUSION**

The appellant was a scaffold builder who was working with the crane operator – an employee of the appellee – at the time of the accident, because there was no scaffolding to be built.  The operation underway at the time of the accident – moving cargo boxes from a vessel to the deck of the platform – was a crane operation, and had nothing to do with scaffolding.  During these operations, the appellant slipped and fell on a slippery deck.  The crane operator, who was supervising the appellant's crew at the time, failed to take precautionary measures to avoid or remedy the hazard that caused the appellant's accident (i.e., the slippery deck).  The District Court's conclusion that the appellee, through its crane operator, did not owe a duty to the appellant is not supported by the record or by the law.

The summary judgment entered herein in favor of Wood Group should be reversed, and this matter should be remanded to the District Court for further proceedings.


RESPECTFULLY SUBMITTED:


\_\_s/ David C. Whitmore_____
LAWRENCE BLAKE JONES  (7495)
DAVID C. WHITMORE        (17864)
SCHEUERMANN & JONES
701 Poydras Street, Suite 4100
New Orleans, Louisiana  70139
Telephone:  (504) 525-4361
Facsimile:  (504) 525-4380

## **CERTIFICATE OF SERVICE**

I do hereby certify that on the 18th day of October, 2013, a copy of the above and foregoing pleading was electronically filed with the Clerk of Court using the CM/ECF system which will send a notice of electronic filing too all counsel of record who have elected e-notification by operation of the court's electronic filing system.  I further certify that, on the aforementioned date, I also served a copy of the foregoing pleading upon all counsel of record electronically as follows:

David W. Leefe:           dwleefe@liskow.com

Devin C. Reid:            dcreid@liskow.com

_____s/ David C. Whitmore_____

**Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements**

1.    This brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) because this brief contains 5,592 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Word 2003 in 14 point Times New Roman.

(s)__s/ David C. Whitmore_____

Attorney for Appellant, Danyon McCarroll

Dated:  10/18/2013